## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| **VANKIRK ELECTRIC, INC.,** | : | **Chapter 11 Case No. 25-30511-AEC** |
| | : | **Chapter 11 Case No. 25-30512-AEC** |
| Debtor. | : | |
| | : | **Joint Administration Requested** |
| | : | |
| **VANKIRK ELECTRIC, INC.,** | : | |
| | : | |
| Movant, | : | |
| | : | **Contested Matter** |
| vs. | : | |
| | : | |
| **FIFTH THIRD BANK, N.A.,** *et al.,*[1] | : | |
| | : | |
| Respondents. | : | |

**MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE; (B) REQUESTING AN EXPEDITED INTERIM HEARING THEREON; AND (C) SCHEDULING A FINAL HEARING ON THE VALUATION AND USE OF CASH COLLATERAL**

Vankirk Electric, Inc. ("**Vankirk**" or "**Debtor**"), Debtor and Debtor-in-Possession in this

Chapter 11 bankruptcy case, files this motion seeking interim and final orders valuing and

---

[1] Additional respondents include: Affinity Capital Group, LLC; Alpha Equity Fund, LLC; Austin Business Finance, LLC d/b/a Backd; Cedar Advance, LLC; CFG Merchant Solutions, LLC; Dynasty Capital 26, LLC; Forever Funding, LLC; Fox Funding Group, LLC; Funderzgroup, LLC d/b/a Mr. Advance; Gelt Capital USA, LLC; Kash Advance, LLC; Merk Funding, Inc.; MNY Capital; Palmetto Capital Ventures, LLC; Propel Advance; Reliance Financial FL, LLC; Rocket Capital NY, LLC; Secure Capital, LLC; C T Corporation System, as Representative (GA UCC Nos. 007-2025-011312, 007-2025-040170, 007-2025-012934, 007-2025-013277, 007-2025-038289); and Corporation Service Company, as Representative (GA UCC Nos. 038-2025-006880, 038-2025-006444, 007-2025-005559, 038-2025-005190).

1

authorizing Debtor to use cash collateral upon a showing of adequate protection, as necessary, to creditors with alleged interests therein ("**Motion**"), and respectfully shows:

## Preliminary Statement

1.      Vankirk, a Georgia corporation, is an electrical contractor that specializes in multi-family construction, including high-density, podium-style, and garden-style apartments, student housing, assisted living facilities, and mixed-use projects across the United States (the "**Business**"). While Vankirk has an operations office at 62 North Jackson Street, Winder, Georgia 30680, it conducts business all over the United States on a project-by-project basis. Loren Wesley Vankirk, Vankirk's CEO and sole shareholder and director, manages Debtor almost exclusively from his home residence in Watkinsville (Oconee County), Georgia.

2.      Without the use of cash collateral, Debtor will be unable to manage and pay the expenses required for the continued operation of its business and performance under its outstanding projects. Therefore, Debtor is requesting interim and final orders authorizing the use of cash collateral in accordance with the proposed budget attached as **Exhibit A** (the "**Budget**").

3.      Accordingly, Debtor moves for the entry of an order pursuant to Sections 361, 362, 363, and 552 of the Bankruptcy Code (the "**Interim Cash Collateral Order**"): (A) authorizing its use of cash collateral on an *interim* basis as described in more detail below and (B) scheduling a final hearing to consider valuation and Debtor's use of cash collateral (the "**Final Cash Collateral Hearing**") and the entry of a final order authorizing the use of cash collateral on a permanent basis (the "**Final Cash Collateral Order**").

## Background

4.      On September 19, 2025 (the "**Petition Date**"), Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5.     Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.     No creditor's committee has been appointed. No trustee or examiner has been appointed.

7.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Sections 361, 362, 363, 506, and 552 of the Bankruptcy Code.

8.     On information and belief, the above-named respondents allege or may allege that their respective claims against Debtor are secured by, among other things, "cash collateral" in the form of accounts, inventory, materials, component parts, work in process, and/or materials utilized in the Business (collectively, "**Cash Collateral**"). Each Respondent will be served with a copy of this Motion as directed by the Court or otherwise in accordance with applicable Bankruptcy Rules for a contested matter, including, without limitation, Rules 2002 and 9014.

9.     Subject to further investigation, and without waiving its right to argue or establish otherwise, Debtor states that Respondent Fifth Third Bank, National Association ("**Fifth Third Bank**") appears to have a first priority security interest in Debtor's Cash Collateral, at the exclusion of all other creditors who might claim an interest in Cash Collateral.

10.     All of the collateral allegedly securing Debtor's obligations to Respondents is now property of Debtor's Bankruptcy Estate as provided by 11 U.S.C. § 541, and subject to the exclusive jurisdiction of this Court.

## **Relief Requested and Basis for Relief**

11.     As noted above, by this Motion, Debtor respectfully requests entry of an interim order pursuant to Sections 361, 362, 363, 506, and 552 of the Bankruptcy Code (A) authorizing its use of Cash Collateral on an interim basis and (B) scheduling the Final Cash Collateral Hearing to consider the entry of a final order valuing Respondents' collateral as provided under 11 U.S.C. § 506 and authorizing Debtor's permanent use of such Cash Collateral.

12.     As more particularly described below, Debtor requires the immediate use of Cash Collateral, wherever located, to continue operations and preserve the value of its assets. Specifically, Debtor seeks to use Cash Collateral to (a) maintain its operations and (b) to pay disbursements more fully described in the Budget and such other disbursements that fall in the category of essential estate preservation costs under § 506(c). The Budget, which Debtor prepared on an emergency basis, reflects Debtor's best projection of revenues and expenses for the first three months or so of the Bankruptcy Case. Debtor reserves the right to amend the Budget up to the time of any hearing on the Motion, including any Preliminary and Final Hearing on the Motion.

13.     Debtor requires the use of its accounts receivable, which receivables may constitute Respondents' Cash Collateral. Absent the use of Cash Collateral, Debtor will be unable to carry on the operation of its business as a going concern. In the absence of the use of Cash Collateral, the continued operation of Debtor's business, even for a limited period of time, would not be possible, and serious and irreparable harm to Debtor and its estate would occur. The use of Cash Collateral is critical to preserve and maintain the going concern value of Debtor.

14.     Debtor has not been able, at this early stage in the case, to obtain consent for the use of Cash Collateral on terms and conditions which Debtor, in its sound business judgment, deems in the best interest of its estate and creditors. If, following the filing of this Motion, Debtor

is unable to reach consensual agreements regarding use of Cash Collateral, then Debtor will request

permanent use of Cash Collateral at the Final Cash Collateral Hearing.

### 1.      Section 363(c)(2) Authorizes Debtor's Use of Cash Collateral.

15.      Section 363 of the Bankruptcy Code governs Debtor's use of cash collateral.  Under

Section 363(c)(2), a debtor may not use cash collateral unless "(A) each entity that has an interest

in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes the use,

sale or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section

363(a) defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or
> other cash equivalents whenever acquired in which the estate and an entity other
> than the estate have an interest and includes the proceeds, products, offspring, rents,
> or profits of property . . . , whether existing before or after the commencement of a
> case under this title.

11 U.S.C. § 363(a).

16.      A debtor's cash "is the life's blood of the business," and the bankruptcy court must

ensure that such life's blood "is available for use, even if to a limited extent." *In re Mickler*, 9 B.R.

121, 123 (Bankr. M.D. Fla. 1981). A debtor may use cash collateral to continue its operations so

long as the interests asserted by affected creditors in such cash are adequately protected. Thus,

courts must balance the protection that a debtor seeks to provide with the debtor's need to use cash

in its reorganization effort. *Stein v. U.S. Farmers Home Admin. (In re Stein)*, 19 B.R. 458, 459

(Bankr. E.D. Pa. 1982). In ruling on whether a creditor is adequately protected early in a case,

courts "will generally permit the business operation to continue, at least to the point of plan

formulation, if the debtors make a solid evidentiary showing to support their projections[.]" *In re

Dynaco Corp.*, 162 B.R. 389, 395 (Bankr. D.N.H. 1993).

17.     Consistent with these requirements, courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and, thus, maximize the value of an estate for all interested parties. *See*, *e.g.*, *Dynaco*, 162 B.R. at 394 (granting a motion for the use of cash collateral and stating that "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary in order to operate a business"); *Chrysler Credit Corp. v. George Ruggiere Chrysler-Plymouth, Inc. (George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1020 (11th Cir. 1984) (allowing debtor to use cash collateral over secured creditor's objection after noting that "[w]ithout the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated."); *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1399 (10th Cir. 1987) (permitting debtor to use cash collateral to expand operations after finding there was only a low risk that secured creditor's interest would diminish); *In re Stein*, 19 B.R. at 459 (granting cash collateral motion and declaring that access to cash is imperative for a debtor to operate its business).

18.     Pursuant to Section 552(b)(1), this Court may also permit a debtor to continue to use cash collateral based on the "equities of the case."[2] Section 552(a) provides a general rule that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the

---

[2]     Section 552(b)(1) provides as follows:

Except as provided in Sections 363, 506(c),  522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, *except to any extent that the court, after notice and hearing and based on the equities of the case, orders otherwise*. (emphasis added).

commencement of the case." 11 U.S.C. § 552(a). However, Section 552(b)(1) creates an exception

to this general rule and preserves a creditor's lien on post-petition "proceeds, products, offspring,

or profits" of pre-petition collateral as a long as the security agreement so provides. 11 U.S.C. §

552(b)(1). However, this exception to the general is also subject to exception "to any extent that

the court, after notice and a hearing and based on the equities of the case, orders otherwise." *Id.*

19.     The purpose of the "equities of the case" exception, is to allow a court to balance

the need to preserve a valid security interest in proceeds, while also protecting the interest of

unsecured creditors. *See, e.g.*, *In re Photo Promotion Associates, Inc.* 61 B.R. 936, 939-40 (Bankr.

S.D.N.Y. 1986); *In re Muma Servs.*, 322 B.R. 541, 558-59 (Bankr. D. Del. 2005) (J. Walrath)

(citing *Photo Promotion Associates, Inc.*); *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 409-10

(Bankr. N.D. Tex. 2003); *Bank of N. Ga. v. Strick Chex Columbus Two, LLC (In re Strick Chex

Columbus Two, LLC)*, 542 B.R. 914, 920 (Bankr. N.D. Ga. 2015, Drake, J.).

20.     For example, a debtor or other contributing party may provide value, in the form of

labor or unencumbered materials, which is used in combination with a secured creditor's collateral

to generate cash that may be considered proceeds of the secured creditor's collateral. *See In re

Cafeteria Operators, L.P.*, 299 B.R. at 409-10. To prevent a secured creditor from receiving a

windfall based on the increased collateral value, the "equities of the case" exception allows the

court to allocate the added value to the estate. *Id.*; *see also In re Strick Chex Columbus Two, LLC*,

542 B.R. at 920.

21.     Debtor's case presents the scenario where the "equities of the case" exception is of

critical importance to the ability of Debtor to continue to operate and is crucial to the ability of the

unsecured creditors to obtain a meaningful recovery.

22.    The exception for the "equities of the case" expressly empowers this Court to balance the interests of the creditors against other interests, such as Debtor's possible rehabilitation, the preservation of jobs, and the preservation of the going concern value of Debtor's business. *See*, *e.g. United Virginia Bank v. Slab Fork Coal Co.*, 784 F.2d 1188, 1191 (4th Cir. 1986) (Section 552(b) "gives the bankruptcy court considerable latitude"); *In re: Topgallant Group, Inc.,* 1992 WL 12004198 (Bankr. S.D. Ga. 1992). It is Debtor's post-petition labor and materials that are required to perform and finish projects that will not only increase the value of the collateral but keep Debtor in business. *See In re Cafeteria Operators, L.P.*, 299 B.R. at 410.

23.    Further, the § 552(b)(1) reference to § 506(c) further indicates that this Court has discretion to permit the limited use of cash collateral for preservation of estate assets.

**2.    Debtor's Proposal for Providing Adequate Protection to Respondents.**

24.    The standards for authorizing Debtor to use Cash Collateral are satisfied in this instance because the Debtor's ongoing business operations will generate proceeds from projects and thereby adequately protect and preserve the value of any collateral securing Debtor's pre-petition obligations, and Respondents will be further adequately protected, to the extent that they are entitled to adequate protection, as provided below.

25.    Courts have held that secured lenders are adequately protected when cash collateral is used to pay operating expenses of a Chapter 11 debtor. For example, in *In re Stein*, the Bankruptcy Court for the Eastern District of Pennsylvania granted a debtor's request to use cash collateral over the secured creditor's objection. *In re Stein*, 19 B.R. at 458. In that case, the debtor sought to use cash proceeds, from a contract with a third party, for operational costs during the Chapter 11 case. *Id.* at 459. A secured creditor, holding liens on the debtor's collateral and proceeds therefrom, objected to the debtor's request. *Id.* Ruling in the debtor's favor, the court

8

acknowledged two competing concerns: (i) "protecting the holder of a lien on cash collateral against unrestricted use of such collateral" and (ii) "rehabilitating the chapter 11 debtor by allowing it to use the cash collateral where necessary to operate the debtor's business." *Id.* In weighing these two factors, the court first observed that the objecting creditor was under-secured. *Id.* at 460. Nevertheless, the court explained that the debtor's continued operation was the only means by which the creditor's secured position could be preserved. *Id.* A creditor is not entitled to more protection than it received when making the loan. *Id.* The court concluded that the facts of the case and the "[Bankruptcy] Code's policy favoring rehabilitation" allowed the debtor to utilize the cash proceeds of its operations. *Id.*

26.     Cash is necessary for working capital and operating costs and expenses at the outset of and during this Chapter 11 case. Debtor's ability to maintain business relationships with its suppliers, service providers, contractors, and employees is dependent on its ability to continue to operate the business as projected on the Budget, and Debtor cannot operate unless it can fund payments for post-petition services and other operating expenses. Thus, use of Cash Collateral is essential to the continued viability and the value of the business as a going concern and will enhance the prospects for Debtor. Furthermore, the alternative in the case is, as one court put it, "to force the debtor[] to close down [its] operations and thus doom any effort at reorganization which will hopefully extract the maximum value of the assets involved to the benefit of all classes of creditors and other constituencies involved in this case." *See Dynaco Corp.*, 162 B.R. at 396. Because this result would stand in diametrical opposition to the rehabilitative purpose of Chapter 11, approval of this Motion is warranted. *See id.* at 394 (noting that "it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible") (quoting *In re Prime, Inc.*, 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)).

### 3.      Adequate Protection Proposal

27.      As noted above, a debtor's authority to use cash collateral is typically conditioned on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C. § 363(e). "The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in § 361." *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Section 361 of the Bankruptcy Code contains a non-exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

28.      The determination of adequate protection is a "fact-specific inquiry." *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("Its application is left to the vagaries of each case . . .") (citation omitted). The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from diminution in the value of its collateral during the reorganization process.   *Id.* at 288 (citation omitted); *In re Beker Indus. Corp.*, 58 B.R. at 736.  *See In re WorldCom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy.").

29.      What constitutes adequate protection must be decided on a case-by-case basis. *See*, *e.g., MBank Dallas v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987) (citing *Martin v. United States (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985)); *Kimbrough Inv. Co. v. Royal d'Iberville Corp. (In re Royal d'Iberville)*, 10 B.R. 37, 39 (Bankr. S.D. Miss. 1981)

("Opinions as to what is adequate protection must be determined on a case-by-case basis and opinions will vary greatly from court-to-court because adequate protection is not defined in the Bankruptcy Code.").

30.    Importantly, the entitlement to, form of, and amount of adequate protection should be based on a showing that the adequate protection provided is calculated to offset any diminution in value of the Respondents' collateral due to its use in Debtor's operations: "Despite its form, the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case . . . . Where a debtor desires to use cash collateral, a court must determine the value of the creditor's interest in the cash collateral and whether the debtor's proposed use of cash collateral would impair that interest and to what extent adequate protection is required." *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Col. 1995) (internal citations omitted). Moreover, courts should take equitable considerations into account in determining what constitutes adequate protection. *See Dynaco*, 162 B.R. at 394 ("Adequate protection will take many forms, only some of which are set forth in section 361 of the Bankruptcy Code . . . and must be determined based upon equitable considerations arising from the particular facts of each proceeding."); *Stein*, 19 B.R. at 459 ("The equities in each case must be weighed in striking a balance.").

31.    Here, Debtor proposes to adequately protect Respondents via the following, as may be applicable: (a) the payment of all post-petition property taxes on any collateral held by Respondents as and when they become due; (b) maintaining adequate insurance on Respondents' collateral; (c) continuing to repair, and maintain and, as necessary, replace Respondents' collateral (including machinery and equipment); (d)   provide replacement liens or adequate protection

payments to the extent such collateral is diminished by its use, and (e) operating the business in substantial compliance with the Budget.

32.     In summary, Respondents will be adequately protected because Debtor's use of Cash Collateral will preserve the value of their collateral for the benefit of not only Debtor but also of Respondents by facilitating Debtor's financial rehabilitation through a Chapter 11 plan. If Debtor is not given access to cash, then it will undoubtedly be forced to shut down operations and Debtor's assets would be liquidated, with its primary assets—receivables—being worthless. However, with the use of Cash Collateral to conduct Debtor's business, Debtor will be able to preserve and protect the value of its assets, including the pre-petition collateral.

### 4.     Interim Approval for the Use of Cash Collateral Should Be Granted

33.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after the service of such motion. Similarly, Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition grant, among other things, a motion to use, sell, lease property of the debtor's estate."

34.     Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

35.     Pursuant to Bankruptcy Rules 4001(b) and 6003, Debtor requests that the Court conduct an expedited preliminary hearing on the Motion and (i) authorize Debtor to use Cash Collateral to (a) maintain and finance the ongoing operations of Debtor and (b) avoid immediate and irreparable harm and prejudice to Debtor's estate and all parties-in- interest and (ii) schedule the Final Cash Collateral Hearing on the relief requested herein.

## Notice

36.     The Debtor will serve this Motion as directed in any Order granting an expedited hearing on the Motion.

**WHEREFORE**, Debtor moves this Court for authority to use the Cash Collateral pursuant to the terms and conditions of the proposed Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection (a proposed copy of which is attached as **Exhibit B**) and, thereafter, pursuant to the terms and conditions of a Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection. Debtor further prays for all other legal and equitable relief to which it may be entitled.

Respectfully submitted this 23rd day of September, 2025.

> **STONE & BAXTER, LLP**
> By:
>
> */s/ David L. Bury, Jr.*
> David L. Bury, Jr.
> Georgia Bar No. 133066
> G. Daniel Taylor
> Georgia Bar No. 528521
> Thomas B. Norton
> Georgia Bar No. 997178
> dbury@stoneansbaxter.com
> dtaylor@stoneandbaxter.com
> tnorton@stoneandbaxter.com

577 Third Street
Macon, Georgia 31201
478.750.9898
478.750.9899 (fax)

> Proposed Counsel for Debtor

G:\CLIENTS\Vankirk Electric, Inc\First Day Motions\Expedited\3. Motion to Use Cash Collateral - Vankirk.docx

**EXHIBIT A**

**Proposed Interim Budget**

(attached separately)

Vankirk Electric, Inc. Chapter 11 Case #25-30511
Mon Arc Group, Inc. Chapter 11 Case #25-30512
3-week budget - Cash Collateral (000's)
Consolidated

| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Period Start** | 22-Sep-25 | 29-Sep-25 | 6-Oct-25 | 13-Oct-25 | 20-Oct-25 | 27-Oct-25 | 3-Nov-25 | 10-Nov-25 | 17-Nov-25 | 24-Nov-25 | 1-Dec-25 | 8-Dec-25 | 15-Dec-25 | 22-Dec-25 | |
| **Period End** | 26-Sep-25 | 3-Oct-25 | 10-Oct-25 | 17-Oct-25 | 24-Oct-25 | 31-Oct-25 | 7-Nov-25 | 14-Nov-25 | 21-Nov-25 | 28-Nov-25 | 5-Dec-25 | 12-Dec-25 | 19-Dec-25 | 26-Dec-25 | 13-Week |
| **Cash Receipts** | | | | | | | | | | | | | | | |
| Accounts Receivable | 1,528 | 1,525 | 1,354 | 2,448 | 1,449 | 2,717 | 1,894 | 2,448 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 26,163 |
| Misc. | 0 | | | | | | | | | | | | | | |
| **Total Cash Receipts** | 1,528 | 1,525 | 1,354 | 2,448 | 1,449 | 2,717 | 1,894 | 2,448 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 26,163 |
| **Cash Payments** | | | | | | | | | | | | | | | |
| *Employee Payroll, Taxes, Insurances* | | | | | | | | | | | | | | | |
| Jobsite Workforce | (750) | 0 | (750) | 0 | (750) | 0 | (750) | 0 | (750) | 0 | (750) | 0 | (750) | 0 | (5,250) |
| Non Arc Firm Payroll | 0 | (400) | 0 | (400) | 0 | (400) | 0 | (400) | 0 | (400) | 0 | (400) | 0 | (400) | (2,800) |
| Cigna (Medical) - Auto pay 20th | | | (175) | | | | (175) | | | | | (175) | | | (525) |
| Cigna (Dental) - Auto Pay 12th | | | | | (65) | | | | (65) | | | | | (65) | (195) |
| Lincoln Financial | | | | (6) | | | | (6) | | | | (6) | | | (18) |
| Expense Reimbursements | | | | (9) | | | | (9) | | | | (9) | | | (27) |
| | | | (50) | | | | (50) | | | | (50) | | | | (150) |
| **Subtotal - Payroll** | (750) | (400) | (975) | (415) | (815) | (400) | (975) | (415) | (815) | (400) | (800) | (590) | (750) | (465) | (8,965) |
| Corporate Income Tax | 0 | 0 | 0 | (835) | (341) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (1,176) |
| Casualty Policies | (177) | | | | | | | | | | (193) | | | | |
| Office Leases | | (60) | | | | | (60) | | | | (60) | | | | |
| Utilities/Maintenance | | | | (19) | | | | | | | (19) | | | | (76) |
| Licensing | | (14) | | | | | (14) | | | | (14) | | | | |
| Advertising | | (2) | | | | | (2) | | | | (2) | | | | (6) |
| Recruiting | | (4) | | | | | (4) | | | | (4) | | | | (18) |
| Fedex and Postage | | (2) | | | | | (4) | | | | (2) | | | | (21) |
| Bank Fees, Dues | (10) | (5) | | | | | (7) | | | | (7) | | | | |
| Phones | (25) | (25) | | | | | (25) | | | | (25) | | | | |
| Storage | | (10) | | (9) | | | (16) | (2) | | (16) | (16) | (16) | (16) | (16) | (200) |
| Subscriptions | (12) | (53) | (12) | | (12) | | (16) | (12) | (12) | (12) | (20) | | | (20) | (138) |
| Attorneys, CPA's (Non-Restr) | (100) | | | | (80) | | | | | (80) | (100) | | | | (100) |
| Office/IT Supplies | (50) | (12) | | | (6) | | (12) | | | (6) | (12) | | | (6) | (105) |
| **Subtotal - Overhead** | (354) | (201) | (12) | (854) | (499) | (43) | (156) | (18) | (28) | (186) | (356) | (16) | (16) | (185) | (2,922) |
| Vehicles | (1) | (5) | (2) | (1) | (1) | 0 | (5) | (2) | (1) | (1) | (5) | (2) | (1) | (1) | (28) |
| **Subtotal - Debt Service Vehicles** | (1) | (5) | (2) | (1) | (1) | 0 | (5) | (2) | (1) | (1) | (5) | (2) | (1) | (1) | (28) |
| Material Supplier | (389) | (100) | (100) | (100) | (1,018) | (100) | (100) | (100) | (100) | (4,642) | (100) | (100) | (100) | (3,900) | (10,949) |
| Subcontractors | (84) | (20) | (20) | (20) | (50) | (20) | (20) | (20) | (20) | (50) | (20) | (20) | (20) | (50) | (434) |

**Vankirk Electric, Inc. Chapter 11 Case #25-30511**
**Mon Arc Group, Inc. Chapter 11 Case #25-30512**
**13-week budget - Cash Collateral (000's)**
**Consolidated**

| Period Start | 22-Sep-25 | 29-Sep-25 | 6-Oct-25 | 13-Oct-25 | 20-Oct-25 | 27-Oct-25 | 3-Nov-25 | 10-Nov-25 | 17-Nov-25 | 24-Nov-25 | 1-Dec-25 | 8-Dec-25 | 15-Dec-25 | 22-Dec-25 | Total |
| Period End | 26-Sep-25 | 3-Oct-25 | 10-Oct-25 | 17-Oct-25 | 24-Oct-25 | 31-Oct-25 | 7-Nov-25 | 14-Nov-25 | 21-Nov-25 | 28-Nov-25 | 5-Dec-25 | 12-Dec-25 | 19-Dec-25 | 26-Dec-25 | 13-Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Storage | (74) | (15) | (15) | (15) | (74) | (15) | (15) | (15) | (15) | (74) | (15) | (15) | (15) | (74) | (446) |
| Generators | (60) | 0 | 0 | 0 | (60) | 0 | 0 | 0 | 0 | (60) | 0 | 0 | 0 | (60) | (240) |
| Rental Equipment | (107) | 0 | 0 | 0 | (107) | 0 | 0 | 0 | 0 | (36) | 0 | 0 | 0 | (36) | (286) |
| Permits | (150) | 0 | 0 | 0 | (150) | 0 | 0 | 0 | 0 | (150) | 0 | 0 | 0 | (220) | (670) |
| Travel | (21) | (21) | (21) | (21) | (21) | (21) | (21) | (21) | (21) | (21) | (21) | (21) | (21) | (21) | (294) |
| **Subtotal - Job Costs** | **(412)** | **(36)** | **(36)** | **(36)** | **(412)** | **(36)** | **(36)** | **(36)** | **(36)** | **(341)** | **(36)** | **(36)** | **(36)** | **(411)** | **(1,936)** |
| **Restructuring Expenses** | | | | | | | | | | | | | | | |
| Legal Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Professionals | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Fees | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5/3 Term Loan | (563) | (700) | (953) | (1,234) | (773) | (426) | (1,230) | (399) | (808) | (226) | (1,255) | (572) | (731) | (110) | (9,980) |
| 5/3 Line of Credit | (603) | (171) | (171) | (171) | (1,500) | (171) | (171) | (171) | (171) | (5,124) | (171) | (171) | (171) | (4,382) | (13,319) |
| Taxes/5/3 Line of Credit | (130) | 0 | 0 | 0 | (130) | 0 | 0 | 0 | 0 | (130) | 0 | 0 | 0 | (130) | (520) |
| **Total Restructuring** | **(1,296)** | **(871)** | **(1,124)** | **(1,405)** | **(2,403)** | **(597)** | **(1,401)** | **(570)** | **(979)** | **(5,480)** | **(1,426)** | **(743)** | **(902)** | **(4,622)** | **(23,818)** |
| **Total Cash Payments** | **(1,708)** | **(907)** | **(1,160)** | **(1,441)** | **(2,815)** | **(633)** | **(1,437)** | **(606)** | **(1,015)** | **(5,821)** | **(1,462)** | **(779)** | **(938)** | **(5,033)** | **(25,754)** |
| **Net Cash End** | **1,068** | **1,687** | **1,881** | **2,888** | **1,522** | **3,605** | **4,062** | **5,905** | **6,690** | **2,669** | **3,007** | **4,028** | **4,890** | **1,657** | **1,657** |
| **Cash Movement Summary** | | | | | | | | | | | | | | | |
| Cash Beginning Balance | 1,248 | 1,068 | 1,687 | 1,881 | 2,888 | 1,522 | 3,605 | 4,062 | 5,905 | 6,690 | 2,669 | 3,007 | 4,028 | 4,890 | 1,248 |
| Increase/(Decrease) | (180) | 619 | 194 | 1,007 | (1,366) | 2,084 | 457 | 1,843 | 785 | (4,021) | 338 | 1,021 | 862 | (3,233) | 409 |
| Net Cash End | 1,068 | 1,687 | 1,881 | 2,888 | 1,522 | 3,605 | 4,062 | 5,905 | 6,690 | 2,669 | 3,007 | 4,028 | 4,890 | 1,657 | 1,657 |
| **Contract Receivable Reconciliation** | | | | | | | | | | | | | | | |
| Beginning Balance | 15,922 | 22,394 | 20,869 | 19,515 | 17,067 | 23,618 | 20,901 | 19,007 | 16,559 | 22,759 | 20,959 | 19,159 | 17,359 | 18,559 | 15,922 |
| Billings | 8,000 | - | - | - | 8,000 | - | - | - | 8,000 | - | - | - | 3,000 | 5,000 | 32,000 |
| Collections | 1,528 | 1,525 | 1,354 | 2,448 | 1,449 | 2,717 | 1,894 | 2,448 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 26,163 |
| Ending Balance | 22,394 | 20,869 | 19,515 | 17,067 | 23,618 | 20,901 | 19,007 | 16,559 | 22,759 | 20,959 | 19,159 | 17,359 | 18,559 | 21,759 | 21,759 |

Notes:

1. Inventory levels are assumed to remain stable.

[1] To the extent any budget line item is paid via 5/3rd P-Card transaction, the budgeted amount for that line item will be paid toward the outstanding P-Card balance weekly.

[2] Adequate Protection Payments are equal to current P&I contractual terms on term loan and accrued interest at the Note rate on the Line of Credit.

[3] Additional Adequate Protection payments monthly equal to the any difference between the then current borrowing base and the outstanding principal balance of the line of credit.

**MON ARC GROUP INC CASH BUDGET**
Updated: 9/19
13-week budget - Cash Collateral (000)'s

| Week | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total 13-Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week ending | 26-Sep-25 | 3-Oct-25 | 10-Oct-25 | 17-Oct-25 | 24-Oct-25 | 31-Oct-25 | 7-Nov-25 | 14-Nov-25 | 21-Nov-25 | 28-Nov-25 | 5-Dec-25 | 12-Dec-25 | 19-Dec-25 | 26-Dec-25 | |
| **Cash Receipts** | | | | | | | | | | | | | | | |
| Accounts Receivable | 346 | 525 | 325 | 1,299 | 355 | 1,373 | 800 | 1,285 | 800 | 800 | 800 | 800 | 800 | 800 | 11,108 |
| Misc | | | | | | | | | | | | | | | |
| **Total Cash Receipts** | 346 | 525 | 325 | 1,299 | 355 | 1,373 | 800 | 1,285 | 800 | 800 | 800 | 800 | 800 | 800 | 11,108 |
| **Cash Payments** | | | | | | | | | | | | | | | |
| Onsite Workforce Payroll, Taxes, Insurances | (300) | | (300) | | (300) | | (300) | | (300) | | (300) | | (300) | | (2,100) |
| Mon Arc Firm Payroll | | (100) | | (100) | | (100) | | (100) | | (100) | | (100) | | (100) | (700) |
| Iliga (Medical) - Auto pay 20th | | | | | | | | | | | | | | | |
| Iliga (Dental) - Auto Pay 12th | | | | | | | | | | | | | | | |
| Mon Arc Financial | | | | | | | | | | | | | | | |
| Expense Reimbursements | | | (20) | | | | (20) | | | | (20) | | | | (60) |
| **Subtotal - Payroll** | (300) | (100) | (320) | (100) | (300) | (100) | (320) | (100) | (300) | (100) | (320) | (100) | (300) | (100) | (2,860) |
| Corporate Income Tax | | | | | (341) | | | | | | | | | | (341) |
| Casualty Policies | (89) | (6) | | | | | (6) | | | | (97) | | | | (197) |
| Office Leases | | | | | | | | | | | | | | | |
| Attorneys, CPA's (Non-Restr) | (40) | | | | (40) | | | | | (40) | | | | (40) | (160) |
| Subscriptions | (4) | (18) | | (3) | (4) | (3) | | (1) | (4) | (4) | | | | (7) | (46) |
| Postage | (3) | | | | (3) | | | | | (3) | | | | (3) | (12) |
| Licensing | | | | | (6) | (6) | (6) | (6) | (6) | (6) | (6) | (6) | (6) | (6) | (60) |
| Advertising | | | | | (5) | | | | | (5) | | | | (5) | (15) |
| Recruiting | | | | | (2) | | | | | (2) | | | | (2) | (6) |
| Fedex and Postage | | | | | (2) | | | | | (2) | | | | (2) | (6) |
| Bank Fees, Dues | | | (2) | | | | (2) | | | | (2) | | | | (6) |
| Phones | | | | | (10) | | | | | (10) | | | | (10) | (30) |
| Office/IT Supplies | | | | | (6) | | | | | (6) | | | | (6) | (18) |
| **Subtotal - Overhead** | (136) | (24) | (2) | (3) | (419) | (9) | (14) | (7) | (10) | (78) | (105) | (6) | (6) | (81) | (897) |
| Vehicles | | (1) | (2) | | | | (1) | (2) | | | (1) | (2) | | | (9) |
| **Subtotal - Debt Service Vehicles** | 0 | (1) | (2) | 0 | 0 | 0 | (1) | (2) | 0 | 0 | (1) | (2) | 0 | 0 | (9) |
| Material Supplier | (100) | (50) | (50) | (50) | (800) | (50) | (50) | (50) | (50) | (1,800) | (50) | (50) | (50) | (1,800) | (5,000) |
| Subcontractors | (27) | (10) | (10) | (10) | (15) | (10) | (10) | (10) | (10) | (15) | (10) | (10) | (10) | (15) | (172) |
| Storage | (30) | (10) | (10) | (10) | (30) | (10) | (10) | (10) | (10) | (30) | (10) | (10) | (10) | (30) | (220) |

Mon Arc Group, Inc. Chapter 11 Case #25-30512

**MON ARC GROUP INC CASH BUDGET**
13-week budget - Cash Collateral (000)'s
Updated: 9/19

| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week** | 22-Sep-25 26-Sep-25 | 29-Sep-25 3-Oct-25 | 6-Oct-25 10-Oct-25 | 13-Oct-25 17-Oct-25 | 20-Oct-25 24-Oct-25 | 27-Oct-25 31-Oct-25 | 3-Nov-25 7-Nov-25 | 10-Nov-25 14-Nov-25 | 17-Nov-25 21-Nov-25 | 24-Nov-25 28-Nov-25 | 1-Dec-25 5-Dec-25 | 8-Dec-25 12-Dec-25 | 15-Dec-25 19-Dec-25 | 22-Dec-25 26-Dec-25 | 13-Week |
| Generators | | | | | (30) | | | | | (30) | | | | (30) | (90) |
| Rental Equipment | (5) | (5) | (5) | (5) | (35) | (5) | (5) | (5) | (5) | (35) | (5) | (5) | (5) | (35) | (160) |
| Permits | (5) | (5) | (5) | (5) | (50) | (5) | (5) | (5) | (5) | (50) | (5) | (5) | (5) | (50) | (205) |
| Travel | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (70) |
| Other | | | | | | | | | | | | | | | |
| **Subtotal - Job Costs** | (172) | (85) | (85) | (85) | (965) | (85) | (85) | (85) | (85) | (1,965) | (85) | (85) | (85) | (1,965) | (5,917) |
| **Restructuring Expenses** | | | | | | | | | | | | | | | |
| Legal Fees | | | | | | | | | | (15) | | | | | (15) |
| Debtor Professionals | | | | | | | | | | 0 | | | | | 0 |
| UST Fees | | | | | | (7) | | | | | | | | | (7) |
| Other | | | | | | | | | | 0 | | | | | 0 |
| **Subtotal - Restructuring** | | | | | | (7) | | | | (15) | | | | | (22) |
| 5/3 Term Loan | | | | | | | | | | | | | | | |
| 5/3 Line of Credit | | | | | | | | | | | | | | | |
| **Total Restructuring** | | | | | | (7) | | | | (15) | | | | | (22) |
| **Total Cash Payments** | (608) | (210) | (409) | (188) | (1,684) | (200) | (420) | (194) | (395) | (2,158) | (511) | (193) | (391) | (2,146) | (9,705) |
| **Cash Movement Summary** | | | | | | | | | | | | | | | |
| Beginning line | 483 | 222 | 537 | 453 | 1,564 | 235 | 1,408 | 1,788 | 2,879 | 3,284 | 1,926 | 2,216 | 2,823 | 3,232 | 483 |
| Increase (Decrease) | (262) | 316 | (84) | 1,111 | (1,329) | 1,173 | 380 | 1,092 | 405 | (1,358) | 290 | 607 | 409 | (1,346) | 1,403 |
| **Total Cash End** | 222 | 537 | 453 | 1,564 | 235 | 1,408 | 1,788 | 2,879 | 3,284 | 1,926 | 2,216 | 2,823 | 3,232 | 1,886 | 1,886 |
| **Contract Receivable Reconciliation** | | | | | | | | | | | | | | | |
| Beginning Balance | 5,105 | 7,759 | 7,234 | 6,909 | 5,610 | 8,255 | 6,882 | 6,082 | 4,797 | 6,997 | 6,197 | 5,397 | 4,597 | 6,797 | 5,105 |
| Billings | 3,000 | - | - | - | 3,000 | - | - | - | 3,000 | - | - | - | 3,000 | - | 12,000 |
| Collections | 346 | 525 | 325 | 1,299 | 355 | 1,373 | 800 | 1,285 | 800 | 800 | 800 | 800 | 800 | 800 | 11,108 |
| **Ending Balance** | 7,759 | 7,234 | 6,909 | 5,610 | 8,255 | 6,882 | 6,082 | 4,797 | 6,997 | 6,197 | 5,397 | 4,597 | 6,797 | 5,997 | 5,997 |

**VANKIRK ELECTRIC INC CASH BUDGET**
Updated: 9/19
3-week budget - Cash Collateral (000)'s

| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total 13-Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week (start) | 22-Sep-25 | 29-Sep-25 | 6-Oct-25 | 13-Oct-25 | 20-Oct-25 | 27-Oct-25 | 3-Nov-25 | 10-Nov-25 | 17-Nov-25 | 24-Nov-25 | 1-Dec-25 | 8-Dec-25 | 15-Dec-25 | 22-Dec-25 | |
| Week (end) | 26-Sep-25 | 3-Oct-25 | 10-Oct-25 | 17-Oct-25 | 24-Oct-25 | 31-Oct-25 | 7-Nov-25 | 14-Nov-25 | 21-Nov-25 | 28-Nov-25 | 5-Dec-25 | 12-Dec-25 | 19-Dec-25 | 26-Dec-25 | |
| **Cash Receipts** | | | | | | | | | | | | | | | |
| Accounts Receivable | 1,182 | 1,000 | 1,029 | 1,149 | 1,094 | 1,344 | 1,094 | 1,163 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 15,055 |
| Misc | | | | | | | | | | | | | | | |
| **Total Cash Receipts** | **1,182** | **1,000** | **1,029** | **1,149** | **1,094** | **1,344** | **1,094** | **1,163** | **1,000** | **1,000** | **1,000** | **1,000** | **1,000** | **1,000** | **15,055** |
| **Cash Payments** | | | | | | | | | | | | | | | |
| Onsite Workforce | (450) | | (450) | | (450) | | (450) | | (450) | | (450) | | (450) | | (3,150) |
| Employee Payroll, Taxes, Insurances | | (300) | | (300) | | (300) | | (300) | | (300) | | (300) | | (300) | (2,100) |
| Non Arc Firm Payroll | | | (175) | | | | (175) | | | | | (175) | | | (525) |
| Aetna (Medical) - Auto pay 20th | | | | | (65) | | | | (65) | | | | | (65) | (195) |
| CIGNA (Dental) - Auto Pay 12th | | | | (6) | | | | (6) | | | | (6) | | | (18) |
| Unum / Principal Financial | | | | (9) | | | | (9) | | | | (9) | | | (27) |
| Expense Reimbursements | | | (30) | | | | (30) | | | | (30) | | | | (90) |
| **Subtotal - Payroll** | **(450)** | **(300)** | **(655)** | **(315)** | **(515)** | **(300)** | **(655)** | **(315)** | **(515)** | **(300)** | **(480)** | **(490)** | **(450)** | **(365)** | **(6,105)** |
| Corporate Income Tax | | | | (835) | | | | | | | | | | | (197) |
| Liability Policies | | | | | | | | | | | | | | | (180) |
| Office Leases | | | | | | | | | | | | | | | (76) |
| Utilities/Maintenance | | | | | | | | | | | | | | | (169) |
| Attorneys, CPA's (Non-Restr) | | | | | | | | | | | | | | | (92) |
| Subscriptions | | | | | | | | | | | | | | | (88) |
| Postage | | | | | | | | | | | | | | | (140) |
| Travel | | | | | | | | | | | | | | | (42) |
| Licensing | | | | | | | | | | | | | | | (6) |
| Advertising | | | | | | | | | | | | | | | (42) |
| Recruiting | | | | | | | | | | | | | | | (12) |
| Fedex and Postage | | | | | | | | | | | | | | | (12) |
| Bank Fees, Dues | | | | | | | | | | | | | | | (15) |
| Phones | | | | | | | | | | | | | | | (75) |
| Office/IT Supplies | | | | | | | | | | | | | | | (86) |
| **Subtotal - Overhead** | **(219)** | **(177)** | **(10)** | **(851)** | **(80)** | **(34)** | **(142)** | **(11)** | **(18)** | **(108)** | **(252)** | **(10)** | **(10)** | **(104)** | **(1,190)** |
| Vehicles | (1) | (4) | | (1) | (1) | | (4) | | (1) | | (4) | | (1) | (1) | (19) |
| **Subtotal - Debt Service Vehicles** | **(1)** | **(4)** | | **(1)** | **(1)** | | **(4)** | | **(1)** | | **(4)** | | **(1)** | **(1)** | **(19)** |
| Material Supplier | (289) | (50) | (50) | (50) | (218) | (50) | (50) | (50) | (50) | (2,842) | (50) | (50) | (50) | (2,100) | (5,949) |
| Subcontractors | (57) | (10) | (10) | (10) | (35) | (10) | (10) | (10) | (10) | (35) | (10) | (10) | (10) | (35) | (262) |
| Storage | (44) | (5) | (5) | (5) | (44) | (5) | (5) | (5) | (5) | (44) | (5) | (5) | (5) | (44) | (226) |

**VANKIRK ELECTRIC INC CASH BUDGET**
Updated: 9/19
3-week budget - Cash Collateral (000)'s

| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total 13-Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week start | 22-Sep-25 | 29-Sep-25 | 6-Oct-25 | 13-Oct-25 | 20-Oct-25 | 27-Oct-25 | 3-Nov-25 | 10-Nov-25 | 17-Nov-25 | 24-Nov-25 | 1-Dec-25 | 8-Dec-25 | 15-Dec-25 | 22-Dec-25 | |
| Week end | 26-Sep-25 | 3-Oct-25 | 10-Oct-25 | 17-Oct-25 | 24-Oct-25 | 31-Oct-25 | 7-Nov-25 | 14-Nov-25 | 21-Nov-25 | 28-Nov-25 | 5-Dec-25 | 12-Dec-25 | 19-Dec-25 | 26-Dec-25 | |
| Generators | (10) | (10) | (10) | (10) | (50) | (10) | (10) | (10) | (10) | (50) | (10) | (10) | (10) | (50) | (150) |
| Rental Equipment | | | | | (72) | | | | | (72) | (72) | | | (72) | (126) |
| Permits | (15) | (15) | (15) | (15) | (100) | (15) | (15) | (15) | (15) | (100) | (100) | (15) | (15) | (100) | (465) |
| Travel | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (16) | (224) |
| **Subtotal - Job Costs** | **(431)** | **(86)** | **(86)** | **(86)** | **(535)** | **(86)** | **(86)** | **(86)** | **(86)** | **(3,159)** | **(86)** | **(86)** | **(86)** | **(2,417)** | **(7,402)** |
| **Restructuring Expenses** | | | | | | | | | | | | | | | |
| Legal Fees | | | | | | | | | | (75) | | | | | (75) |
| Other Professionals | | | | | | | | | | (20) | | | | | (20) |
| 5/3 Fees | | | | | | (13) | | | | | | | | | (13) |
| 5/3 Term Loan | | (60) | | | | | (60) | | | | (60) | | | | (180) |
| 5/3 Line of Credit | | (70) | | | | | (70) | | | | (70) | | | | (210) |
| **Total Restructuring** | | **(130)** | | | | **(13)** | **(130)** | | | **(95)** | **(130)** | | | | **(498)** |
| **Net Cash Payments** | **(1,101)** | **(697)** | **(751)** | **(1,253)** | **(1,131)** | **(433)** | **(1,017)** | **(412)** | **(620)** | **(3,663)** | **(952)** | **(586)** | **(547)** | **(2,887)** | **(15,214)** |
| **Cash Movement Summary** | | | | | | | | | | | | | | | |
| Cash Beginning line | 765 | 847 | 1,150 | 1,428 | 1,324 | 1,287 | 2,197 | 2,274 | 3,025 | 3,405 | 742 | 791 | 1,205 | 1,658 | 765 |
| Increase (Decrease) | 82 | 303 | 278 | (104) | (37) | 911 | 77 | 751 | 380 | (2,663) | 49 | 414 | 453 | (1,887) | (994) |
| Cash End | 847 | 1,150 | 1,428 | 1,324 | 1,287 | 2,197 | 2,274 | 3,025 | 3,405 | 742 | 791 | 1,205 | 1,658 | (229) | (229) |
| **Contract Receivable Reconciliation** | | | | | | | | | | | | | | | |
| Beginning Balance | 10,817 | 14,635 | 13,635 | 12,606 | 11,457 | 15,363 | 14,019 | 12,925 | 11,762 | 15,762 | 14,762 | 13,762 | 12,762 | 11,762 | 10,817 |
| Billings | 5,000 | - | - | - | 5,000 | - | - | - | 5,000 | - | - | - | - | 5,000 | 20,000 |
| Collections | 1,182 | 1,000 | 1,029 | 1,149 | 1,094 | 1,344 | 1,094 | 1,163 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 15,055 |
| Ending Balance | 14,635 | 13,635 | 12,606 | 11,457 | 15,363 | 14,019 | 12,925 | 11,762 | 15,762 | 14,762 | 13,762 | 12,762 | 11,762 | 15,762 | 15,762 |

**EXHIBIT B**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | |
| **VANKIRK ELECTRIC, INC.,** | : | **Chapter 11 Case No. 25-30511-AEC** |
| | : | **Chapter 11 Case No. 25-30512-AEC** |
| **Debtor.** | : | |
| | : | **Joint Administration Requested** |
| | : | |
| **VANKIRK ELECTRIC, INC.,** | : | |
| | : | |
| **Movant,** | : | |
| | : | **Contested Matter** |
| **vs.** | : | |
| | : | |
| **FIFTH THIRD BANK, N.A.,** *et al.,*[3] | : | |
| | : | |
| **Respondents.** | : | |
| | : | |

**INTERIM ORDER (A) AUTHORIZING THE USE OF CASH COLLATERAL
PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND (B)**

---

[3] Additional respondents include: Affinity Capital Group, LLC; Alpha Equity Fund, LLC; Austin Business Finance, LLC d/b/a Backd; Cedar Advance, LLC; CFG Merchant Solutions, LLC; Dynasty Capital 26, LLC; Forever Funding, LLC; Fox Funding Group, LLC; Funderzgroup, LLC d/b/a Mr. Advance; Gelt Capital USA, LLC; Kash Advance, LLC; Merk Funding, Inc.; MNY Capital; Palmetto Capital Ventures, LLC; Propel Advance; Reliance Financial FL, LLC; Rocket Capital NY, LLC; Secure Capital, LLC; C T Corporation System, as Representative (GA UCC Nos. 007-2025-011312, 007-2025-040170, 007-2025-012934, 007-2025-013277, 007-2025-038289); and Corporation Service Company, as Representative (GA UCC Nos. 038-2025-006880, 038-2025-006444, 007-2025-005559, 038-2025-005190).

## SCHEDULING A FINAL HEARING ON VALUATION AND USE OF CASH COLLATERAL

Upon the motion of Debtor dated September 23, 2025 (i) seeking authority for Debtor's use of "cash collateral" (as defined in section 363(a) of the Bankruptcy Code); (ii) seeking to provide adequate protection to the named Respondents in the Motion; and (iii) requesting interim relief pending a final hearing (the "**Final Hearing**") concerning the relief requested in the Motion; it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b); that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; the Motion having come on for preliminary hearing pursuant to 11 U.S.C. § 363(c)(2)(3)  (the "**Preliminary Hearing**") on September __, 2025; and, on the record of the Preliminary Hearing, the Court finds and determines that: (i) the form of the Motion complies with F.R.B.P. 4001(b)(1); (ii) due and adequate notice of the Motion and Hearing has been given under the circumstances; and (iii) except as provided otherwise below, Debtor's  use of cash collateral in substantial compliance with the budget attached as **Exhibit 1** (the "**Budget**") and otherwise for necessary estate preservation expenses under 11 U.S.C. § 506(c) is necessary to avoid immediate and irreparable harm to the estate pending the Final Hearing; it is accordingly, ORDERED AS FOLLOWS:

1.      <u>Interim Relief Granted</u>. The Motion is granted on an interim basis pending the Final Hearing and the use of Cash Collateral in substantial compliance with the Budget and for necessary estate preservation expenses under 11 U.S.C. § 506(c) is hereby authorized until further order of this Court, subject to the terms and conditions set forth in this Interim Order.

2.      <u>Authorization to Use Cash Collateral</u>. Debtor is authorized to use Cash Collateral in substantial compliance with the Budget and for necessary estate preservation expenses under 11 U.S.C. § 506(c).

3.      <u>Adequate Protection</u>. Except as noted, Debtor shall provide the following adequate protection pending the Final Hearing:

a.    <u>Continuation of Pre-Petition Security Agreements</u>. All pre-petition liens, if any, of Respondents and any other parties with an interest in Cash Collateral shall, subject to any limitations in or interventions of the Bankruptcy Code, continue through and including the Final Hearing.

b.    <u>Continued Operation and Maintenance of Debtor's Business</u>. Debtor shall continue to operate and maintain its business and properties in accordance with this Interim Order.

c.    <u>Payment of Post-Petition Property Taxes</u>. Debtor shall pay when due post-petition property taxes with respect to the properties held by Respondents.

d.    <u>Payment of Property Insurance</u>. Debtor shall maintain property insurance on the properties collateralizing Respondents' secured claims.

4.    <u>Objections Carried to Final Hearing</u>. All objections to the Motion, if any, are carried to the Final Hearing for determination.

5.    <u>Final Hearing</u>.  A Final Hearing on the Motion to Use Cash Collateral **shall be held on the _____ day of October, 2025, commencing at the at the United States Bankruptcy Court, 115 East Hancock Avenue, Athens, Georgia 30601**. Such Final Hearing shall continue day to day and from time to time until completed.

6.    <u>Service by the Debtor</u>. Within three (3) business days after the entry of this Interim Order, the Debtor shall serve a copy of this Interim Order on all parties specified by F.R.B.P. 4001(b)(1)(C) and any party requesting notice in this case.

**END OF DOCUMENT**

**Prepared and presented by:**
<u>*/s/ David L. Bury, Jr.*</u>
David L. Bury, Jr.
Georgia Bar No. 133066
Stone & Baxter, LLP
577 Third Street
Macon, Georgia 31201
(478) 750-9898; (478) 750-9899 (fax)
dbury@stoneandbaxter.com
Proposed Counsel for the Debtor

**Exhibit 1**

**Interim Cash Collateral Budget**

**(to be attached)**