**SO ORDERED.**

**SIGNED this 24 day of September, 2026.**

**Austin E. Carter**
**Chief United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| **IN RE:** | |
| **VANKIRK ELECTRIC, INC. and MON ARC GROUP, INC.,** | **Chapter 11 Case No. 25-30511-AEC**<br>**Chapter 11 Case No. 25-30512-AEC** |
| **Debtors.** | **Jointly Administered** |
| **VANKIRK ELECTRIC, INC. and MON ARC GROUP, INC.,** | |
| **Movants,** | **Contested Matter** |
| **vs.** | |
| **FIFTH THIRD BANK, N.A., *et al.*,** | |
| **Respondents.** | |

**FINAL ORDER PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND F.R.B.P. 4001 (I) AUTHORIZING USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION**

Upon the motions of Debtors Vankirk Electric, Inc. ("**Vankirk**") and Mon Arc Group, Inc. ("**Mon Arc**" and together with Vankirk, "**Debtors**") each dated September 23, 2025 (Dkt. 6 in

Case No. 25-30511-AEC and Dkt. 8 in Case No. 25-30512-AEC) (collectively, the "**Motion**") (i) seeking authority for Debtors' use of "cash collateral" (as defined in section 363(a) of the Bankruptcy Code); (ii) seeking to provide adequate protection to Respondents[1]; and (iii) requesting interim relief pending a final hearing on the Motion on November 18, 2025 (the "**Final Hearing**); entry of the *Interim Order Pursuant to Sections 361 and 363 of the Bankruptcy Code and F.R.B.P. 4001 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing* (Dkt. 30) (the "**First Interim Order**"); and Fifth Third Bank's Limited Objection to Debtors' Motion for Authorization to Use Cash Collateral on Final Basis (Dkt. 83) (the "**Limited Objection**"); and entry of the *Second Interim Order Pursuant to Sections 361 and 363 of the Bankruptcy Code and F.R.B.P. 4001 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing for December 5, 2025* (Dkt. 115) (the "**Second Interim Order**"); and the entry of that *Interim Order Providing for the Employment of Richard Gaudet, of GGG Partners, LLC, as Chief Restructuring Officer for the Debtors* (Dkt. 144) (the "**CRO Order**" and Mr. Gaudet being the "**CRO**"); and the entry of the *Third Interim Order Pursuant to Sections 361 and 363 of the Bankruptcy Code and F.R.B.P. 4001 (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing for December 16, 2025* (Dkt. 146) (the "**Third Interim Order**" and together with the First Interim Order and the Second Interim Order, the "**Interim Orders**"); and it appearing

---

[1] In addition to Fifth Third Bank, N.A., Respondents across both Debtors include the following: Affinity Capital Group, LLC; Alpha Equity Fund, LLC; Austin Business Finance, LLC d/b/a Backd; Cedar Advance, LLC; CFG Merchant Solutions, LLC; Dynasty Capital 26, LLC; Forever Funding, LLC; Fox Funding Group, LLC; Funderzgroup, LLC d/b/a Mr. Advance; Gelt Capital USA, LLC; Kash Advance, LLC; Merk Funding, Inc.; MNY Capital; Palmetto Capital Ventures, LLC; Propel Advance; Rocket Capital NY, LLC; Reliance Financial FL, LLC; Rocket Capital NY, LLC; Secure Capital, LLC; C T Corporation System, as Representative (GA UCC Nos. 007-2025-011312, 007-2025-040170, 007-2025-012934, 007-2025-013277, 007-2025-038289; CA UCC Nos. U230053566923, U250187878036); and Corporation Service Company, as Representative (GA UCC Nos. 038-2025-006880, 038-2025-006444, 007-2025-005559, 038-2025-005190); CA UCC No. U250116232323).

that this Court has jurisdiction to consider the Motion and Limited Objection in accordance with 28 U.S.C. §§ 157 and 1334, that the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b), and that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; the Motion having last come on for hearing on December 16, 2025 at 10:00 a.m. (Eastern) (the "**Hearing**"); the Court having heard from Debtors' counsel and counsel for Fifth Third Bank, N.A. ("**Fifth Third**" or the "**Bank**")[2] at the September 22, 2026 hearing regarding their agreement as to Debtors' use of cash collateral subject to the limitations provided in the Interim Orders and this Final Order; there being no objections to the relief granted in this Final Order not otherwise resolved by the provisions of this Final Order; and the Court having determined that such relief, including, without limitation, authorization for Debtors' use of cash collateral on a final basis in compliance with the four (4) week budget attached to this Final Order as **Exhibit 1** (the "**Budget**"), has been consented to by Fifth Third as evidenced by the signature of their undersigned counsel. Accordingly, it is ORDERED AS FOLLOWS:

1. Final Relief Granted. The Motion is granted on a final basis and the use of Cash Collateral in compliance with the Budget is hereby authorized, subject to the terms and conditions set forth in this Final Order and the Budget. Nothing in this Final Order prevents Fifth Third from consenting to the use of Cash Collateral for the payment of ordinary course post-petition expenses of the estates outside the scope of the Budget categories, subject to Fifth Third's express prior written consent to expenditures in the ordinary course of Debtors' business operations that are outside the scope of such Budget categories.

2. Authorization to Use Cash Collateral. Debtors are authorized to use Cash Collateral in compliance with the Budget during the period of time set forth in that Budget. The period

[2] References in this Final Order to Fifth Third or the Bank shall also, as applicable, refer to Fifth Third's and the Bank's assigns.

commencing on the date of the First Interim Order through the Termination Date (as defined below) is hereinafter referred to as the "**Cash Collateral Period**". No variance from the Budget shall be permitted unless Debtors, in advance of any such variance, (a) obtain written approval from Fifth Third or (b) secure authorization by Order of this Court, with the following limited exceptions for which advance approval or Court-authorization is not required (the "**Permitted Variances**"):

i. actual expenditures of Debtors under any category (as opposed to any line item) of the Budget for any calendar week may exceed the budgeted expenditure amount for that category by up to ten percent (10%);

ii. any budgeted expenditure not expended by Debtors during the period in which it is budgeted (an "Unused Expenditure") may be expended by Debtors in a period that is subsequent to the calendar week in which it was budgeted (as long as such subsequent calendar week is covered by this Final Order and provided that no more than $2 million in Unused Expenditures may be used throughout the Cash Collateral Period without Fifth Third's prior written consent), in which case the Budget will be deemed revised to schedule such expenditure during the calendar week in which it is expended; provided, however, that the reports and reconciliations to be provided by Debtors as addressed below shall reflect all such expenditure date modifications (both during the period(s) in which such expenditure was budgeted and not paid and during the period in which such previously budgeted expenditure was paid);

iii. all Permitted Variances, including with respect to differences in budgeted amount(s) versus actual amount(s) and calendar week budgeted amount(s) versus calendar week actual amount(s), shall be conspicuously set out, reflected, and addressed within and as a part of the Weekly Reports (defined below) required by the terms of this Final Order, as further addressed

below; iv. that pursuant to Sections 105, 363, and 542 of the Bankruptcy Code, any contractors, account debtors of the Debtors, or other third party holding a receivable owed to the Debtors (each a "**Payor**") may pay the Debtors said receivable as Debtors' interests appear; provided however, that upon prior written approval from the Bank, any Payor may directly pay the portion of such receivable necessary to satisfy and obtain lien releases from any known supplier or subcontractor claims with statutory liens or the ability to assert statutory liens pursuant to applicable non-bankruptcy law as permitted under the parties' applicable contracts with the Debtors and/or their pre-petition ordinary course of action; and

v. that subject to the limitations in paragraph (i) above, C. Herman Construction, as a Payor, was previously authorized to (A) make payments in connection with projects known as (i) the Mallard Creek Apartments Project located in Mecklenburg County, North Carolina; (ii) the Eastland Yards Apartments Project located in Mecklenburg County, North Carolina; (iii) the Eastland Yards Parking Deck Project located in Mecklenburg County, North Carolina; (iv) the Mariposa Riverblue Project located in Buncombe County, North Carolina; and (v) the Encore at Reems Creek Project located in Buncombe County, North Carolina (hereinafter the "**Projects**") immediately and directly to the Debtors in the amount $280,000.00 and to WESCO International in the amount of $270,000.00 (after or contemporaneous with obtaining lien releases), all as approved by the Bank, and (B) C. Herman Construction may make additional payments to the Debtors and, with the Bank's written approval, Debtors' suppliers or subcontractors, irrespective of any UCC lien notice, claims of ownership, or similar notice regarding the Debtors' accounts receivable that such parties may have received from any creditor of the Debtors or party claiming to have purchased accounts receivable from the Debtors; for the avoidance of doubt, the transfers authorized in this paragraph shall not result in any liability from

the Payors to any party who has, or may, deliver any UCC lien notice, claims of ownership, or similar notice regarding the Debtors' accounts receivable provided that the transfer is made during the term of this Order and with the Bank's advance written approval.

b. Budget Extensions. On or before a date that is two weeks prior to the last day covered by the Budget, the Debtors shall submit a proposed ten (10) week budget covering the period that begins in the week immediately following the end of the Budget then in effect (the "**Extended Budget**") to the Bank and the Bank's counsel. The Bank shall have one week from the Debtors' submission to inform the Debtors whether it, in its sole discretion, approves that proposed Extended Budget provided that the Bank may approve a proposed Extended Budget for a period of time that is less than ten (10) weeks in its sole and absolute discretion. If the Bank so approves, the Debtors shall file a notice in the record of the Extended Budget stating that such budget has become the budget approved by this Final Order, without further action by the Court. If the Bank does not approve the proposed Extended Budget for a period of ten (10) weeks or less, the Debtors or the Bank may request that the Court hold a hearing on the Debtors' request to use the Debtors' cash under that further Extended Budget. Once approved, the Extended Budget becomes the Budget then in effect for the ensuing period covered by that Extended Budget.

3. Adequate Protection. During the Cash Collateral Period, Debtors shall continue to provide the following forms of adequate protection to Fifth Third ("**Adequate Protection**"):

a. Continuation of Pre-Petition Security Agreements. All pre-petition liens and/or security interests of Fifth Third shall, subject to any limitations in the Bankruptcy Code, continue through and including the Cash Collateral Period.

b. Continued Operation and Maintenance of Debtors' Business. Debtors shall continue to operate and maintain their business and property in accordance with the Interim Orders and this Final Order.

c. Payment of Property Insurance. Debtors shall maintain property insurance on the property collateralizing Fifth Third's secured claims against Debtors, with Fifth Third named as a loss payee on all insurance covering Fifth Third's Collateral (as defined below in this Final Order).

d. Weekly Reporting. On or before 9:00 p.m. (Eastern time) each Wednesday until further order of this Court, Debtors shall continue to provide Fifth Third, via email to their counsel, a weekly budget reconciliation (showing an actual versus budgeted comparison), prepared on a cash basis, for the previous seven (7) day period covering the prior Saturday through prior Friday, accompanied by (i) a cash disbursements journal reflecting all cash revenues and cash expenditures to permit reconciliation of all cash collateral and proceeds and all expenditures concerning the same with and against the terms of the Interim Orders, this Final Order, and the Budget and (ii) a payroll register for the reporting period which identifies the employees and the amounts that each employee received from the payroll(s) in that period (collectively, the "**Weekly Reports**"). Additionally, Debtors shall provide Fifth Third (i) with each weekly report, information about daily deposits and withdrawals for all bank accounts of Debtors (with Fifth Third or otherwise) and (ii) copies of bank statements for all bank accounts of Debtors (with Fifth Third or otherwise) as such statements become available prior to a weekly reporting deadline; provided, however, that Debtors have committed to Fifth Third that Debtors will continue using the Fifth Third bank accounts.

e. Replacement Liens. Fifth Third is hereby again granted, from and after the Petition Date, replacement liens and security interests ("**Replacement Liens**") in any and all assets

acquired by Debtors after the Petition Date and during and after the Cash Collateral Period of the same priority, kind, category, and character that Fifth Third held a perfected lien and/or security interest against Debtors' assets as of the Petition Date, specifically including all cash proceeds arising from such property that existed as of the Petition Date or acquired by Debtors after the Petition Date, in the same nature, extent, priority, and validity that such liens and/or security interests existed on the Petition Date (collectively, the "**Collateral**"). Other than as set forth herein as to the Carve Out (defined herein), the Replacement Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest previously or hereinafter granted in this case or in any case under Chapter 7 of the Bankruptcy Code upon conversion of this case, or in any other proceedings superseding or related to any of the foregoing (collectively, a "**Successor Case**"). The Replacement Liens shall be valid, binding, and enforceable against the CRO, any trustee, or other estate representative appointed in this case or a Successor Case or upon the dismissal of this case or a Successor Case. The Replacement Liens are in addition to and not in substitution for Fifth Third's existing security interests and liens. Fifth Third shall not be required to make any filings to perfect the Replacement Liens (although they may elect to), and the Replacement Liens shall automatically be deemed to be perfected.

f. <u>Senior Super-Priority Administrative Expense Claim</u>. Fifth Third shall continue to have allowed senior super-priority administrative expense claims with priority over any and all other administrative expenses, adequate protection claims, and all other claims against Debtors now existing or hereafter arising of any kind whatsoever as provided under Section 507(b) of the Bankruptcy Code (including, without limitation, all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code and over any and all administrative expenses or other claims arising under the Bankruptcy Code, except that the Bank's administrative

expense claims secured by the "Carve Out" shall be junior in priority only to the claims of the Debtors' professionals and the US Trustee under that Carveout set out hereinbelow) but only up to and including the full amount of any diminution of value of Fifth Third's respective Collateral as a result of the authorizations to Debtors permitted by the terms of the Interim Orders and this Final Order and any other use of Fifth Third's Collateral (which diminution in value, if any, Fifth Third will have the burden of establishing with the Court after notice and opportunity for a hearing), which super-priority claims shall be payable from all property of Debtors' estates and the proceeds thereof.

i. For clarity, the senior super-priority administrative expense claims granted to Fifth Third in the Interim Orders and pursuant to this paragraph 3(f), (a) shall not extend to any recoveries from the proceeds of Chapter 5 avoidance actions (including, without limitation, 11 U.S.C. §§ 542, 544, 545, 547, 548, 550, and 553 and similar state law claims, but not including proceeds derived from Section 549 avoidance actions which are recovered assets comprised of all or part of the Collateral of Fifth Third) and (b) shall extend to and include any proceeds of any Chapter 5 avoidance actions comprised (in whole or in part) of Fifth Third's Collateral and/or rights, claims, or interests subject to pre- or post-petition lien(s) or security interest(s) held by Fifth Third. (These senior super-priority administrative expense claims, together with the Replacement Liens, are sometimes referred to collectively in the Interim Orders and this Final Order as the "**Adequate Protection Collateral**". The Adequate Protection Collateral and the other collateral of Fifth Third are sometimes referred to collectively in this Final Order as the "**Collateral**".)

ii. The Adequate Protection Collateral and associated rights, claims, liens, and interests granted to Fifth Third by the terms of the Interim Orders and this Final Order shall not be (i) subject or subordinate to any lien or security interest that is avoided and preserved for the benefit of Debtors and their estates under Section 551 of the Bankruptcy Code or (ii) to the extent that any other post-petition financing is approved by the Court or as otherwise provided in this Final Order, subordinated to any other lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise.

iii. Except as otherwise provided in this Final Order, the Adequate Protection Collateral shall be senior to all other security interests in, liens on, and claims against any of the Adequate Protection Collateral except for the Carve Out (defined below). The Adequate Protection Collateral shall be enforceable against Debtors, their estates, and any successors thereto, including, without limitation, the CRO, any trustee or other estate representative appointed in this case or a Successor Case. The Adequate Protection Collateral shall be: (a) in continuation of and in addition to all valid and enforceable liens and security interests now existing in favor of Fifth Third and not in substitution therefor and (b) effective as of the Petition Date, deemed duly perfected without the necessity of filing in any country, state, county, or local recorder's office or elsewhere, any additional documents or notices to perfect such post-petition liens and security interests.

Nothing in this Final Order shall limit Fifth Third's right to seek adequate protection beyond the adequate protection provided in the Interim Orders or this Final Order, and nothing in this Final Order or otherwise shall be deemed or construed to limit, impair, or otherwise prejudice Fifth Third's right to seek or obtain such adequate protection or any other relief.

g. Carve Out. In order to ensure the payment of the fees and/or the reimbursement of expenses described in this subparagraph (provided that such fees and expenses are allowed by the Bankruptcy Court under Sections 327, 328, 330, 331, 363, or other applicable provisions of the Bankruptcy Code and any interim compensation Order of this Bankruptcy Court, but only up to the amounts set forth in the Budget), Fifth Third hereby provides (i) to professionals engaged and duly retained on the motion or other application of the Debtors (the "**Debtors' Professionals**")[3] with a carveout from the Collateral secured by the Liens, the Replacement Liens, and Additional Liens that is up to $1,058,000 in the aggregate for unpaid fees and expenses incurred for work performed from the Petition Date through the earlier of (a) the last date covered by the Budget (which reflects fees and expenses of Debtors' Professionals over that period less pre-petition retainers) or (b) the date of an uncured Termination Event (so that the amount of the carveout from the Petition Date through the date that cash collateral authorization terminates tracks the allocated amounts in the Budget or any Extended Budget), with such amount increasing to reflect the total amount budgeted for Debtors' Professionals in any Extended Budget through the earlier of (a) the last date covered by the Extended Budget or (b) the date of an uncured Termination Event (so that the amount of the carveout from the Petition Date through the date that cash collateral authorization terminates tracks the allocated amounts in the Extended Budget) (the "**Professionals Carve Out**") and (ii) a carveout from the Collateral secured by the Liens, the Replacement Liens up, and Additional Liens to the amount of unpaid fees payable to the United States Trustee and/or Clerk of this Court incurred from the Petition Date up to the date of an uncured Termination Event

[3] The Debtors' Professionals include, but are not limited to, the following: (i) Stone & Baxter, LLP, as counsel for the Debtors and (ii) Richard Gaudet, of GGG Partners, LLC as the Debtors' Chief Restructuring Officer. The budgeted amounts for fees and expenses for such parties is itemized on the Budget as "Legal Fees" and "Other Professionals."

pursuant to Section 1930 of Title 28 of the United States Code and any interest due and owing pursuant to Section 3717 of Title 31 of the United States Code (the "**UST and Court Fees Carve Out**" and, collectively with the Professionals Carve Out, the "**Carve Out**"). The amounts allocated to each of the Debtors' Professional's fees are wholly separate, with each such Debtors' Professional's allocation reserved for that Debtors' Professional if approved by the Court (i.e., the total budgeted amount for all of the Debtors' Professionals shall not be split pro rata among the Debtor's Professionals if any one Debtors' Professional exceeds the amount budgeted for that Debtors' Professional). Notwithstanding the foregoing, the above-described parties to whom the Carve Out will apply shall apply any retainers received from the Debtors prior to the Petition Date to satisfy any allowed administrative expense claims for professional fees and the like and/or the reimbursement of expenses prior to utilizing any portion of the Carve Out for payment of such allowed fees and expenses. Notwithstanding anything to the contrary in this Final Order, the occurrence of a Termination Event, other than a Termination Event that occurs pursuant to Section 8(a)(vii) of this Final Order, shall (i) not impact or forfeit the Carve Out and (ii) shall not terminate the right of a beneficiary of the Carve Out to the Carve Out merely by reason of a Termination Event, other than a Termination Event that occurs pursuant to Section 8(a)(vii) of this Final Order, occurring prior to payment of the Carve Out. Notwithstanding anything to the contrary herein, any payment, post-petition retainer given to or reimbursement made to a Debtors' Professional prior to the occurrence of the date of an uncured Termination Event shall reduce the amount of Carveout for the Debtors' Professionals.

h. The use of Cash Collateral pursuant to the terms and conditions of the Interim Orders and this Final Order and in accordance with the Budget shall not be deemed to be a consent by Fifth Third to any use of Cash Collateral beyond the Cash Collateral Period or to Debtors paying

any expense in violation of this Final Order or outside the Budget other than the Permitted Variances.

4. Section 506(c) Claims. No costs or expenses of administration that have been or may be incurred in the cases at any time shall be charged against Fifth Third pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of Fifth Third, and no such consent shall be implied from any action, inaction, or acquiescence by any party; provided, however, that the waiver provided for herein shall be subject to the Debtors' ability to use all cash on hand in satisfaction of any expenses or other amounts (solely to the extent set forth in the Budget) actually incurred.

5. Admissions and Stipulations. As set forth in the Second and Third Interim Orders and which continues to be applicable in this Final Order, the Debtors have previously acknowledged, admitted, agreed, and stipulated, and hereby ratify, acknowledge, admit, agree, and stipulate same through the date of the entry of this Final Order, that:

a. As of the Petition Date, the Debtors (as Borrowers) and Fifth Third (as Lender) were parties to that certain Credit Agreement, dated as of November 7, 2024 ("**Credit Agreement**"), pursuant to which Fifth Third made a term loan to the Debtors in the aggregate principal amount of $1,600,000.00 (the "**Term Loan**") and agreed to make available to the Debtors advances under a revolving loan facility in an aggregate amount of up to $15,000,000.00 (the "**Revolver**" and with the Term Loan, the "**Loans**"), as evidenced by that certain Term Loan Promissory Note and Revolving Credit Promissory Note (collectively, the "**Notes**")

b. As of the Petition Date, the Debtors and Fifth Third were parties to that certain Commercial Card Service Agreement (the "**P-Card Agreement**") pursuant to which Fifth Third provided procurement corporate credit cards to the Debtors. Pursuant to the P-Card Agreement and the Credit Agreement, the Debtors are responsible for all obligations and liabilities that they incur in connection with the P-Card Agreement with Vankirk also unconditionally guaranteeing the full and prompt payment and performance by Mon Arc of all obligations that Mon Arc incurs under the P-Card Agreement as set forth therein (the "**P-Card Guarantee**").

c. The Notes, the Credit Agreement, the P-Card Agreement, and the P-Card Guarantee, collectively are the "**Obligations**."

d. As of the Petition Date, the total of the Obligations due to the Bank is no less than $21,152,174.40, including a principal balance of $4,978,496.38 plus finance charges of $54,317.16 due under the P-Card Agreement, a principal balance of $1,111,111.05 plus interest in the amount of $3,724.26 due under the Term Loan, and a principal balance of $14,960,000.00 plus interest in the amount of $44,525.55 due under the Revolver (the "**Pre-Petition Indebtedness**").

e. Pursuant to the Security Agreement dated as of November 7, 2024 (the "**Security Agreement**") between the Debtors and Fifth Third (as the Secured Party) and to secure all the Obligations, the Debtors granted first-priority liens (collectively, the "**Pre-Petition Liens**") on all right, title, and interest in the Debtors' assets, including all personal property, to Fifth Third. Fifth Third also alleges that the Obligations are further secured by that certain Continuing Guaranty Agreement, dated as of November 7, 2024 (the "**Personal Guarantee**" and, together with all other documents executed in connection with the Credit Agreement, the Notes, the P-Card Agreement, the P-Card Guarantee, and the Security Agreement, the "**Loan Documents**") by Loren Wesley Vankirk ("**Mr. Vankirk**") (as Guarantor) in favor of Fifth Third (as Lender) whereby Fifth Third alleges that Mr. Vankirk guaranteed the full and prompt payment and performance of any and all obligations owing by the Debtors to Fifth Third. Debtors acknowledge, admit, agree, and stipulate that Mr. Vankirk executed the Personal Guarantee.

f. Each of the Loan Documents is valid, binding, and enforceable against the Debtors in accordance with its terms. Pursuant to the terms of the Loan Documents, all amounts payable on account of the Obligations are now fully due and payable by the Debtors. The Debtors are each jointly and severally indebted and liable to Fifth Third for such amounts without defense, counterclaim, or offset of any kind. Vankirk, in its capacity as guarantor has no defenses to or offsets against its obligations under its guaranty and is obligated to Fifth Third as set forth in the P-Card Guarantee.

g. The Pre-Petition Liens are valid, binding, perfected, enforceable, non-avoidable, first-priority liens on, and security interests in, all right, title, and interest in all of the Debtors' assets, including but not limited to personal property, and all proceeds and substitutions thereof (collectively, the "**Pre-Petition Collateral**"), and are not subject to avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind pursuant to the Bankruptcy Code or other applicable law.

h. The Debtors will not challenge or seek to avoid the validity or enforceability of the Obligations, nor will the Debtors challenge or seek to avoid the validity, enforceability, priority, or perfection of the Pre-Petition Liens. Further, the Debtors shall not support the efforts of, or provide assistance to, any third-party that undertakes to pursue any such challenge.

6. Challenge Period and Binding Effect. The stipulations and admissions set out above are binding on all parties in interest, including any committee, creditors, the CRO, and Chapter 7 or 11 trustee (if any), because no party timely (a) obtained standing and (b) timely filed an adversary proceeding or contested matter challenging the Obligations, challenging the perfection and senior priority of Fifth Third's interest in the Pre-Petition Collateral, disputing the validity of the admissions and stipulations provided by the Debtors herein, or asserting any other claim or defense, on its own behalf or on behalf of Debtors' estates, against Fifth Third (collectively, the "**Claims and Defenses**") by *December 15, 2025* (the "**Challenge Period**") as established by the Second Interim Order. Accordingly, all Claims and Defenses are *irrevocably waived and released* effective as of the Petition Date and through entry of this Final Order and the Debtors' admissions and stipulations are binding upon all parties, including any trustee or committee, if any.

7. Additional Funding. Nothing in this Final Order obligates or shall be interpreted as obligating Fifth Third to lend additional funds to Debtors and the P-Card shall be deemed terminated.

8. Term of Final Order.

a. Debtors' authority to use cash collateral as provided by the terms of this Final Order shall immediately and automatically terminate upon the earliest occurrence of any of the following (each a "**Termination Event**" and the earliest such date, herein defined as the "**Termination Date**") (and the time period from the Petition Date to the Termination Date being referred to in this Final Order as the "**Cash Collateral Period**"): (i) a proposed Extended Budget has not been approved prior to the expiration of the Budget; (ii) the dismissal of these Chapter 11 cases, the appointment of a Chapter 11 trustee or examiner, or conversion of these Chapter 11 cases to

Chapter 7 cases; (iii) unless the order provides otherwise, the entry of an order granting Fifth Third relief from the automatic stay provisions of Section 362 of the Bankruptcy Code in these Chapter 11 cases; and (iv) the occurrence or existence of a default (including any failure to timely and fully comply with any term or provision) under any of the terms and conditions of this Final Order which remains uncured after three (3) calendar days' written notice to Debtors via correspondence to Debtors' undersigned counsel.

b. Upon the occurrence of a Termination Event, Debtors' authority to use cash collateral shall cease immediately without further order and may be continued only by further order of the Court or by written stipulation signed by counsel for Fifth Third and for Debtors and filed with the Court.

9. Modification of Automatic Stay. The automatic stay of Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (i) permit Fifth Third to document or perfect any rights granted to them under the Interim Orders or this Final Order; (ii) permit Debtors to grant the Replacement Liens and the Adequate Protection Collateral during the Cash Collateral Period and to incur the super-priority claims provided to Fifth Third during the Cash Collateral Period; (iii) permit Debtors to perform such acts as may be needed to assure the perfection and priority of the liens granted herein; and (iv) permit Debtors to incur all liabilities and obligations expressly authorized under the terms of the Interim Orders and this Final Order.

10. Objections and Reservations of Right. Any and all objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

11. Preclusive Effect. Except as explicitly provided in this Final Order, nothing in this Final Order shall be construed as (a) any modification, amendment, or waiver of the validity, enforceability, or priority of any loan or other documents evidencing Other Respondents' claims against Debtors, (b) a determination of the allowed amount of Other Respondents' respective claims against Debtors, (c) a determination of the nature, extent, validity, or priority (junior to Fifth Third Bank) of any liens alleged by Other Respondents (except through actions filed during the Challenge Period), or (d) a determination of what is or what is not property of Debtors' bankruptcy estates, and all rights to object to the amount of Other Respondents' claims against Debtors, to the nature, extent, validity, and priority of Other Respondents' alleged liens (if any) junior to that of Fifth Third Bank, and to what is or is not property of Debtors' bankruptcy estates are hereby reserved and may be asserted by Respondents any other party in interest. (Respondents other than Fifth Third Bank being "**Other Respondents**"). Notwithstanding the foregoing, any objections or claims as to the amount, validity, perfection, and first priority of the claims and liens of Fifth Third Bank were extinguished upon expiration of the Challenge Period.

12. Service by Debtors. Within three (3) calendar days after the entry of this Final Order, counsel for Debtors shall serve a copy of this Final Order on all parties specified by F.R.B.P. 4001(b)(1)(C) and any party requesting notice in this case; provided, however, that such service shall comply with any order limiting notice in this case. Required minimum notice under the Bankruptcy Code and Bankruptcy Rules is hereby reduced for cause pursuant to Bankruptcy Rule 9006(c) to accommodate the notice directed in this Final Order.

13. Final Order. This is a final and appealable order and there is no just cause for delay.

**END OF DOCUMENT**

**Order prepared and submitted by:**

*/s/ David L. Bury, Jr.*
David L. Bury, Jr.
Georgia Bar No. 133066
Stone & Baxter, LLP
577 Third Street
Macon, Georgia 31201
(478) 750-9898; (478) 750-9899 (fax)
*Counsel for Debtors*

**Order consented to by:**

STOLL KEENON OGDEN PLLC

Lea Pauley Goff, KY Bar No. 81266
Emily L. Pagorski, KY Bar No. 90682
400 West Market Street, Suite 2700
Louisville, Kentucky 40202-2828
Email: lea.goff@skofirm.com
emily.pagorski@skofirm.com
Telephone: (502) 333-6000

Adam M. Back, KY Bar No. 91003
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507-1801
Email: adam.back@skofirm.com
Telephone: 859-231-3000

and

ADAMS & REESE LLP

*/s/ John A. Thomson, Jr. (by DLB with express permission)*
John A. Thomson, Jr.
Georgia Bar No. 706760
3424 Peachtree Road, Suite 1600
Atlanta, Georgia 30326
(470) 427-3706
john.thomson@arlaw.com

*Counsel For Plaintiff Fifth Third Bank, National Association*

GGG PARTNERS, LLC

*/s/ Richard B. Gaudet (by DLB with express permission)*
Richard B. Gaudet

2870 Peachtree Road, Suite 502
Atlanta, Georgia 30305
(404) 256-0003
rgaudet@gggmgt.com

*Chief Restructuring Officer for the Debtors*

# EXHIBIT 1

## Cash Collateral Budget

Vankirk Electric, Inc. Chapter 11 Case #25-30511
Mon Arc Group, Inc. Chapter 11 Case #25-30512
4-week budget - Cash Collateral (000)'s

| **Period Start** | **19-Sep-26** | **26-Sep-26** | **3-Oct-26** | **10-Oct-26** |
|---|---|---|---|---|
| **Period End** | **25-Sep-56** | **2-Oct-26** | **9-Oct-26** | **16-Oct-26** |
| Week | 1 | 2 | 3 | 4 |
| **Cash Receipts** | | | | |
| | 2,564 | 800 | 800 | 800 |
| A/R Paid to Suppliers via Joint Check | 0 | 0 | 0 | 0 |
| Misc | 0 | 0 | 0 | 0 |
| **Total Cash Receipts** | **2,564** | **800** | **800** | **800** |
| **Cash Payments** | | | | |
| Jobsite Workforce | (275) | (70) | (275) | (70) |
| **License Holder** | 0 | 0 | 0 | 0 |
| Employee Payroll, Taxes, Insurances | (2) | (240) | (10) | (240) |
| Mon Arc Firm Payroll | 0 | (125) | 0 | 0 |
| Anthem (Medical & Dental) - Due on 1st | 0 | (35) | 0 | 0 |
| Lincoln Financial - Due on 1st | 0 | (3) | 0 | 0 |
| Expense Reimbursements | 0 | 0 | (25) | 0 |
| **Payroll Category** | **(277)** | **(473)** | **(310)** | **(310)** |
| Inner Co Float (receipt in following week) | 0 | 0 | 0 | 0 |
| Corporate Income Tax | (3) | 0 | 0 | 0 |
| Casualty Policies | 0 | 0 | 0 | 0 |
| Office Leases | 0 | (56) | 0 | 0 |
| Utilities/Maintenance | (7) | (7) | (7) | (7) |
| Attorneys, CPA's (Non-Restr) | (29) | (30) | 0 | 0 |
| Subscriptions | (38) | (5) | 0 | 0 |
| Storage/Freight | 0 | (4) | 0 | 0 |
| Travel | (5) | (5) | (5) | (5) |
| Licensing | (2) | (6) | (2) | (2) |
| Advertising | 0 | 0 | (2) | 0 |
| Recruiting/Training | (4) | 0 | 0 | 0 |
| Fedex and Postage | (2) | (2) | (2) | (2) |
| Bank Fees, Dues | 0 | 0 | 0 | (3) |
| Phones | (15) | 0 | (2) | (9) |
| Office/IT Supplies | (3) | (3) | (3) | (3) |
| **Overhead Category** | **(108)** | **(118)** | **(23)** | **(31)** |
| Vehicles | (1) | (2) | 0 | 0 |
| **Debt Service Vehicles Category** | **(1)** | **(2)** | **0** | **0** |
| CoGS paid by Client | 0 | 0 | 0 | 0 |
| Material Supplier | (1,248) | (340) | (40) | (800) |
| Critical Vendors | 0 | 0 | 0 | 0 |
| Subcontractors | (5) | (5) | (5) | (5) |
| Storage/Freight | (35) | (50) | (10) | (10) |

Vankirk Electric, Inc. Chapter 11 Case #25-30511
Mon Arc Group, Inc. Chapter 11 Case #25-30512
4-week budget - Cash Collateral (000)'s

| **Period Start** | **19-Sep-26** | **26-Sep-26** | **3-Oct-26** | **10-Oct-26** |
|---|---|---|---|---|
| **Period End** | **25-Sep-56** | **2-Oct-26** | **9-Oct-26** | **16-Oct-26** |
| Generators | 0 | 0 | 0 | 0 |
| Rental Equipment | (33) | (21) | (8) | (8) |
| Permits | (2) | (2) | (2) | (2) |
| Travel | (12) | (12) | (12) | (12) |
| | | | | |
| **Job Costs Category** | **(1,335)** | **(430)** | **(77)** | **(837)** |
| | | | | |
| **Restructuring Expenses** | | | | |
| Legal Fees | 0 | (25) | 0 | 0 |
| Other Professionals | 0 | (13) | 0 | 0 |
| UST Fees | 0 | 0 | 0 | 0 |
| Other | 0 | 0 | 0 | 0 |
| AP - 5/3 Term Loan | 0 | (50) | 0 | 0 |
| AP - 5/3 Line of Credit | 0 | (80) | 0 | 0 |
| **Restructuring Category** | **-** | **(168)** | **-** | **-** |
| **Total Cash Payments** | **(1,721)** | **(1,191)** | **(410)** | **(1,178)** |
| | | | | |
| **Cash Movement Summary** | | | | |
| Cash Beginning line | 729 | 1,572 | 1,181 | 1,571 |
| Net Increase (Decrease) | 843 | (391) | 390 | (378) |
| **Total Cash End** | **1,572** | **1,181** | **1,571** | **1,193** |
| | | | | |
| Contract Receivable Reconciliation | | | | |
| Beginning Balance | 12,970 | 12,406 | 13,606 | 12,806 |
| Billings | 2,000 | 2,000 | - | - |
| Collections | 2,564 | 800 | 800 | 800 |
| Ending Balance | 12,406 | 13,606 | 12,806 | 12,006 |